**O'BOYLE v. UNITED STATES.**

No. 1530.

District Court, E. D. New York.

Jan. 25, 1933.

See, also, 47 F.(2d) 585.

Macklin, Brown, Lenahan & Speer, of New York City (H. L. Cheyney, of New York City, of counsel), for plaintiff.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Alfred C. McKenzie, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

GALSTON, District Judge.

This case by stipulation was submitted on a record on appeal of a former trial. (C. C. A.) 47 F.(2d) 585. The government moved to amend its answer by alleging in its counterclaim "that the United States of America on April 11, 1920 chartered from Anthony O'Boyle the coal boat Hattie, and during the term of the charter and on June 16, 1920 the said coal boat with a cargo of five hundred tons of coal sank in midstream in North River, and was in danger of becoming a total loss; that Anthony O'Boyle, his agents, and employees knew that the barge Hattie was in an unseaworthy condition on June 16, 1920 and permitted the barge to be towed from Constable Hook in New Jersey to Hoboken; that during the course of this trip the barge sank; that the United States of America requested Anthony O'Boyle to raise the said coal barge Hattie which Anthony O'Boyle refused to do; that thereupon at the request of the United States of America the Merritt-Chapman Derrick & Wrecking Company raised and salvaged the said coal barge, and delivered the coal to the United States and the coal barge to her owner, Anthony O'Boyle; that the United States of America paid Merritt-Chapman Derrick & Wrecking Company for the said salvage service the sum of $4,067.50; that the value of the said Hattie coal barge on June 16 in 1920 was about $6,300 and the value of the said cargo of coal was about $5,500 all of which

was fully saved by reason of the salvage services rendered; that the United States of America is justly entitled to compensation from Anthony O'Boyle for the salvage services so rendered; wherefor the United States of America prays that the complaint be dismissed and judgment be handed to the United States of America in the sum of $4,067.50 with costs and judgment with interest."

Suit was brought under the Tucker Act (24 Stat. 505) for breach of charter hire for a barge and failure to return it.

On June 16, 1920, while the Hattie was still in the possession of the government under the charter, it sank while loaded with a cargo of coal. The barge was raised by a wrecking company employed by the government at a cost to the government of $4,067.50.

Since it was held in (C. C. A.) 47 F.(2d) 585, that the government had not overcome the presumption of negligence, and since no further proof is offered before me, the counterclaim must be dismissed.

The remaining question is the amount of the plaintiff's damages. The government seeks to offset such damage by the expenses to which it was put in raising the boat. Since the barge sank owing to the negligence of the government, such a contention is wholly untenable.

The plaintiff's claim is made up as follows:

Aug. 24th:—Repairs at Liberty Dry
  Dock ........................$7,137.56
Services of Light House Dept.
  searching for boat............   96.00
Detention:—June 16th to July 31st,
  incl. 46 days at $12.00 per day..  552.00
Lines lost: (2) 7" lines, 90'
          (2) 6" lines, 100'
          (2) 3½" lines, 125'
         625 lbs. @ 33¢ per lb.  206.25
Stove and Cabin furniture........  175.00
Gasoline Engine lost.............  125.00
                              $8,291.81

Considering these matters now in order, and first the matter of repairs, the item of $7,137.56 is objected to by the defendant on the ground that that amount is in excess of the value of the boat.

The government's estimate of the value of the coal boat at the date of sinking was $6,300. There was no evidence furnished as to the market value of the boat, and that certainly is the best evidence of valuation. There was no evidence furnished that the

boat had no market value; and in consequence Townsend's estimate is without weight. From his affidavit it appears that he arrived at the figure of $6,300 by estimating its building value in 1900 at $4,500; that it increased in value from 1900 to 1920, 250 per cent., or a total increase of $11,250, making its building value in 1920 $15,750, from which he deducted a 3 per cent. per annum depreciation over a period of twenty years, of $9,450. That is not the way to prove the market value of a boat; and I therefore disregard his testimony as unconvincing and certainly not sufficient to support the defendant's contention that the plaintiff should be limited to such a rough and unsatisfactory estimate of value. The government cites Standard Oil Co. v. Southern Pacific Co., 268 U. S. 146, 45 S. Ct. 465, 467, 69 L. Ed. 890, in support of its attempt to estimate the value of the boat in accordance with the method adopted by Townsend. The case, however, must be read as favoring the libelant's viewpoint. It holds that, though the cost of reproduction as of the date of valuation constitutes evidence properly to be considered in the ascertainment of value, nevertheless: "In case of total loss of a vessel, the measure of damages is its market value, if it has a market value, at the time of destruction."

Certainly there is no contention that the coal boat Hattie did not have a market value.

Accordingly, since there is no proof in contradiction of the repair item, that item is allowed.

The item of $96, expended for searching for the boat, is also a proper item, and should be allowed.

The item of detention from June 16, 1920, to July 31, 1920, of 46 days at $12 a day, a total of $562, presents some difficulty. On the proof presented, this item must be disallowed in accordance with the doctrine of Newtown Creek Towing Co. v. City of New York (C. C. A.) 23 F.(2d) 486; The Wolsum (C. C. A.) 14 F.(2d) 371; The Conqueror, 166 U. S. 125, 17 S. Ct. 510, 41 L. Ed. 937; New Jersey Shipbuilding & Dredging Co. v. James McWilliams Blue Line (C. C. A.) 42 F.(2d) 130, 1930 A. M. C. 1055.

The next item relates to lost lines. The government contends that replacements of new for old should not be allowed, and that the item should be reduced by at least one-third. The cited cases, Galena Nav. Co. v. Sinclair Nav. Co. (C. C. A.) 17 F.(2d) 9, 10, and Constantine & Pickering S. S. Co. v. West India S. S. Co. (D. C.) 231 F. 472,

are, however, certainly not in point. In the former case the most that was said was: "But the party injured is not entitled to make a profit out of the injury," and accordingly only 40 per cent. of the painting item was allowed.

But lost lines are quite a different matter. They are lost. This is not an insurance case. These lines have to be replaced. The item is allowed.

For the same reason the item as to stove and furniture, of $175, is allowed; and also the lost gasoline engine, of $125.

Accordingly, plaintiff may have judgment in accordance with the foregoing opinion.